***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named Employee and named Employer.
3. The carrier liable on the risk is correctly named above.
4. The Employee's average weekly wage will be determined from an I.C. Form 22 Wage Chart to be provided by Defendants with supporting wage information.
5. The Employee sustained an injury by accident on or about July 10, 2006, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of employment and is compensable.
7. Plaintiff's average weekly wage is $407.47, yielding a compensation rate of $271.66.
8. Plaintiff is entitled to payment of temporary partial disability benefits in the amount of $12,804.09 covering the period of July 11, 2006, through July 5, 2008.
9. The parties agreed before the deputy commissioner that all issues have been resolved with the exception of: (1) what additional treatment Plaintiff is entitled for her compensable knee condition; (2) whether Plaintiff's headache condition is related and/or aggravated by her compensable knee condition; (3) whether Plaintiff is entitled to temporary partial disability benefits beyond July 5, 2008. The only issue on defendants' appeal to the Full Commission is the third issue as to plaintiff's entitlement to temporary partial disability after July 5, 2008.
 *********** EXHIBITS *Page 3 
1. The following Exhibit was admitted into evidence before the Deputy Commissioner:
 a. Stipulated Exhibit 1 — I.C. forms and filings, correspondence, discovery documents, and medical records.
2. The following depositions were admitted into evidence before the Deputy Commissioner:
 a. Douglas Messina, M.D.
 b. Clarence E. Ballenger, M.D.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 49 years old. Plaintiff completed in the 10th grade, but she worked towards obtaining her GED, program, lacking only one class for completion.
2. Plaintiff is employed by Defendant-Employer and has been employed by Defendant-Employer since 2000. Prior to that time, she was employed with Moore's Cafeteria. Plaintiff's employment with Moore's Cafeteria ended when Defendant-Employer took over their contract. Defendant-Employer is the cafeteria that serves food to the Marines stationed at Camp Lejeune, North Carolina.
3. When Plaintiff first began working for Moore's Cafeteria, her position was as a mess attendant. These job duties included serving food, washing dishes, and cleaning off tables. She continued in this position once Defendant-Employer obtained the contract. In July 2006, *Page 4 
Plaintiff was lead mess attendant for Defendant-Employer, and was working forty to forty-five hours per week at and earning approximately $10 per hour. Her average weekly wage is $407.47, yielding a compensation rate of $271.66.
4. On July 10, 2006, Plaintiff slipped and fell onto her right knee cap. Plaintiff was out of work for two to three weeks following the injury and went back to work for Employer Defendant as a cashier because it is a sitting position. At the time of hearing before the deputy commissioner on July 30, 2008, Plaintiff remained working for Employer Defendant as a cashier, working four hours a day, less hours than she worked prior to injury and at $8.00 per hour, a lower rate of pay.
5. Plaintiff alleged her knee remains in severe pain and drastically limits her mobility. Plaintiff was unsatisfied with the results her doctors' have found and alleged Defendants had only allowed her to see Dr. Messina for her knee injury.
6. Medical records indicate Plaintiff treated on the same day of her slip and fall at Onslow Memorial Hospital, where X-rays were interpreted as normal and Plaintiff was diagnosed with a right knee contusion/abrasion. Plaintiff saw her family physician, Dr. Robert Kell, on July 17, 2006, who sent her to orthopedic specialist Dr. Noel Rodgers of Jacksonville Orthopedic Clinic on July 19, 2006. Dr. Rodgers diagnosed Plaintiff with a large cartilage bruise and told Plaintiff to use her crutches as long as necessary and to apply frequent ice packs until the injury settled down.
7. At the direction of Defendants, Plaintiff treated under the care of Dr. Richard Boswell of Atlantic Orthopedics beginning on August 2, 2006, and continuing through December 20, 2006. An MRI taken on September 6, 2006, was interpreted as unremarkable except for a small amount of fluid in the soft tissues. Dr. Boswell diagnosed a knee contusion *Page 5 
and had Plaintiff undergo physical therapy and other conservative treatment options for her alleged pain. Dr. Boswell found no internal derangement in Plaintiff's knee and opined she was not a surgical candidate. Dr. Boswell was uncomfortable prescribing Plaintiff narcotics; so he encouraged her to seek another opinion.
8. Defendants sent Plaintiff for a second opinion with Dr. Douglas Messina on January 11, 2007, and she continued seeing him through June 19, 2008. Similar to Dr. Boswell, Dr. Messina found nothing structurally wrong with Plaintiff's knee diagnostically or clinically. However, Plaintiff elected to undergo an exploratory arthroscopy he offered. The arthroscopy was performed on February 8, 2007, and revealed only synovial inflammation or plica, which was debrided. Plaintiff's recovery was unremarkable and she was kept at sedentary duty because of her pain complaints.
9. A September 18, 2007 FCE indicated Plaintiff could perform within a medium range of work despite Plaintiff's significant self-limiting and inconsistent behavior. On October 4, 2007, Dr. Messina noted Plaintiff's reported pain and alleged limitations were out of proportion to arthroscopic and clinical findings and he agreed with work restrictions pursuant to the FCE. Dr. Messina felt Plaintiff had reached maximum medical improvement and assigned a 2% permanent partial impairment rating to the right knee. On June 19, 2008, Dr. Messina noted he was uncertain of the etiology of Plaintiff's alleged pain.
10. On November 26, 2007, Plaintiff sought unauthorized treatment for her knee from her family physician, Dr. Robert Kell. Dr. Kell referred Plaintiff to a neurologist, Dr. Apostolou, to determine if there was nerve damage in the knee. Plaintiff saw unauthorized provider Dr. Michael Apostolou on January 2, 2008, for "multiple persisting pain problems stemming from a workplace accident" including daily headache and right knee pain. A nerve conduction study of *Page 6 
the legs was performed on January 8, 2008. Dr. Apostolou made no mention of the study results at Plaintiff's next visit, on February 1, 2008, except that he reported, "changes of the nerve conduction studies may not reflect injury to smaller caliber nerves." Dr. Apostolou initially held Plaintiff out of work altogether because of her alleged pain complaints, however, on April 9, 2008, he opined, "in view of her improvement, I will agree to her request to resume full work duties." As of May 9, 2008, Dr. Apostolou was prescribing Plaintiff a variety of medicines for her headaches and alleged knee pain. Dr. Apostolou could not be located in order that a deposition be conducted.
11. Plaintiff testified she has had severe migraine headaches since she was a child and treated for her headache condition since the early 1990s. Plaintiff alleged her headaches have doubled in frequency and intensity since she fell at work, and that her dosage of headache medicine has increased. Plaintiff pays for her headache treatment using her own private health insurance. Plaintiff has treated at Coastal Neurological Associates for severe headaches since January 24, 2002. During this time Plaintiff has been seen by Dr. Ballenger, his associate Dr. Khalid Jresiat and their Physician's Assistant, Valerie West. Records indicate at all times Plaintiff reported numerous, severe headaches and that Plaintiff received a number of prescription headache medicines at each visit. Beginning in 2004, and continuing through her last date of treatment on November 7, 2008, the records from Coastal Neurological Associates contain references that indicate Plaintiff's private health insurance would not pay for several prescriptions Plaintiff needed and that Plaintiff often complained of how expensive her headache medications are. The only medical record to reference Plaintiff's knee injury was from December 11, 2007, where PA West noted Plaintiff told her [erroneously] she had "a meniscal tear and ACL tear from a workmen's comp case and underwent surgery". The record also *Page 7 
indicated Plaintiff reported she has had a lot more stress, which has caused her to have more headaches.
12. Dr. Douglas Messina of Carolina Sports Medicine and Orthopedic Specialists is a board certified orthopedic surgeon who gave deposition testimony on September 24, 2008. Dr. Messina testified that MRI findings indicated no cartilage or ligament injuries or other structural abnormalities to Plaintiff's knee, with just some mild inflammation, contrary to Plaintiff's representations. Dr. Messina could not come up with any structural reasons for Plaintiff continuing to have so much pain and felt pain was out of proportion than what he would expect with her findings. Dr. Messina felt he had nothing further to offer Plaintiff, doubted any other orthopedic specialist would be able to offer her anything and felt she may benefit from an evaluation by a rheumatologist and/or pain management.
13. When asked his opinion to a reasonable degree of medical certainty as to whether Plaintiff's right knee injury has caused or aggravated Plaintiff's headache and neck condition, Dr. Messina testified, "she [Plaintiff] did indicate she had a history of migraines and headaches" and, "I do not think [the] knee injury could directly affect her migraines."
14. Dr. Messina testified that secondary gain and a workers' compensation claim may be playing a role in Plaintiff's alleged knee pain symptoms, which was indicated by her self-limiting behavior in the FCE.
15. Dr. Clarence Ballenger of Coastal Neurological Associates is board certified in neurology and testified in a deposition on December 5, 2008. When asked his opinion to a reasonable degree of medical certainty as to whether Plaintiff's workers' compensation injury [knee] has in any way contributed to or worsened her headaches, Dr. Ballenger could not give an opinion to a reasonable degree of medical certainty on this issue. *Page 8 
16. Based on the totality of evidence the undersigned finds Plaintiff's alleged severe, right knee complaints as identified in testimony and medical records to be not credible. The totality of the evidence further suggests Plaintiff is magnifying her symptoms.
17. Prior to the hearing before the deputy commissioner on July 30, 2008, Plaintiff had been released in April 2008 to full duty work by a doctor of her choosing who was not an authorized treating physician. Further, the authorized treating physician in October 2007 had found Plaintiff to be at maximum medical improvement as her complaints of pain where out of proportion to clinical findings, she had exhibited self-limiting, inconsistent behavior on the FCE which, consequently, was to only establish a minimum ability, rather than a maximum ability, in the medium range level of work. In fact, based on the objective findings, the treating doctor would expect Plaintiff to return to unrestricted activities. Only the inexplicable complaints of pain formed a basis for restricted work to a medium level.
18. As evidence by the compromised FCE and Plaintiff's treating doctors' opinion, Plaintiff was capable of working in the position provided by Defendant-Employer which was within her restrictions, for an eight hour period, not just four hours as she had been performing and Defendant-Employer had such work available for eight hours.
19. Based on their qualifications as medical doctors the undersigned assigns greater weight to the testimony of Drs. Messina and Ballenger over the testimony of Plaintiff regarding any causal link and/or aggravation between Plaintiff's longstanding headache condition and her knee injury.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her right knee on July 10, 2006. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have Defendants pay for all medical expenses reasonably related to her compensable knee injury that were or are incurred to lessen the period of disability, effect a cure, or give relief, including the additional medical treatment for Plaintiff's knee pain as recommended by Dr. Messina, her authorized treating physician. However, aside from Plaintiff's testimony, there is no competent evidence that establishes a causal relationship between Plaintiff's compensable knee injury and her longstanding migraine headache condition. Accordingly, medical expenses related to Plaintiff's migraine headaches are not reasonably related to Plaintiff's compensable injury. Further, Plaintiff is not entitled to have Defendants reimburse her private health insurance or herself for any unauthorized treatment she received. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Plaintiff is entitled to pursue a second opinion on the 2% permanent partial disability rating assigned by Dr. Messina, which Defendants shall authorize if requested by Plaintiff. N.C. Gen. Stat. § 97-27(b).
4. Based on the competent credible evidence, Plaintiff was capable of working an eight hour shift in the position provided by Defendant-Employer which was within her restrictions in the medium level work category clearly as of the date of the hearing on July 30, 2008. Thus, for the period from July 6, 2008 when the parties stipulation of temporary partial disability entitlement ceased, through July 30, 2008 Plaintiff is entitled to temporary partial *Page 10 
disability at the same rate as Defendants had previously stipulated. However, for the period from July 31, 2008 and thereafter, Plaintiff is entitled to temporary partial disability based on the difference in Plaintiff's $8.00 per hour post-injury wage and her $10.00 per hour pre-injury wage for an eight hour work day, unless Defendants sooner provide Plaintiff with a suitable position which pays wages comparable to her pre-injury wage, subject to the limitations provide in N.C. Gen. Stat. § 97-30.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall authorize a second opinion with regard to Plaintiff's permanent partial disability rating assigned by Dr. Messina if Plaintiff chooses to do so.
2. Defendants shall authorize an evaluation by a rheumatologist and/or pain management specialist with regard to Plaintiff's alleged knee pain as recommended by the authorized treating physician, Dr. Messina whose medical records, the FCE report as well as Dr. Boswell's records shall be made available to the evaluating physician.
3. Defendants shall continue to pay Plaintiff temporary partial disability benefits from July 5, 2008 to July 30, 2008 at the same rate stipulated by the parties, subject to an attorney's fee set out below. For the period from July 31, 2008 and thereafter Plaintiff is entitled to temporary partial disability based on the wage difference for eight hours per day at $8.00 versus $10.00 per hour, subject to an attorney's fee set out below. *Page 11 
4. A reasonable attorney's fee of 25% of the compensation paid to Plaintiff is approved for Plaintiff's counsel and shall be paid by sending every fourth check directly to Plaintiff's counsel.
5. Defendants shall pay the court costs.
This the 29th day of January, 2010.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER